SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**CHARLOTTE KELLEY, DCB #1736456**
Assistant United States Attorney
Charlotte.Kelley@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-cr-00084-AN |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| **WILMER JOSIEL CRUZ-RAMOS,** | |
| **Defendant.** | |

### Introduction

Defendant Wilmer Josiel Cruz-Ramos was arrested three times in three months for dealing fentanyl in Portland. His first two arrests resulted in state cases that are still pending in Multnomah County. This case arose from his third arrest where he agreed to deal fentanyl to an undercover federal agent for $1,000. During his arrest, a semiautomatic pistol and approximately 27 grams of fentanyl were found in defendant's car.

Defendant will be before the Court for sentencing after pleading guilty to a single-count indictment charging him with Possession with the Intent to Distribute Fentanyl, in violation of

Title 21 U.S.C. § 841(a)(l) and (b)(1)(C). The Court should impose a sentence of 46 months of imprisonment followed by a three-year term of supervised release, and a $100 fee assessment. This recommended sentence is sufficient but not greater than necessary under 18 U.S.C. § 3553(a) to accomplish the goals of sentencing. It fairly balances the nature, circumstances, and seriousness of the offense with defendant's history and characteristics and the need to protect the public, provide deterrence, and promote respect for the law.

**Factual Background**

  **A. The Offense Conduct**

On December 6, 2024, members of the Portland Police Bureau (PPB) arrested defendant after he was observed by officers conducting street-level fentanyl sales in downtown Portland. (PSR ¶ 16). Officers observed a group of people lining up around defendant on the street. (*Id.*) These people approached defendant, handed him cash, and he handed them a white substance out of a baggie. (*Id.*) During his arrest, he was found in possession of 23.42 grams of fentanyl and $128 in cash. (*Id.*) He was charged in Multnomah County Case number 24CR64673. (*Id.*) On December 9, 2024, he was released from custody. (*Id.*) Multnomah County Case number 24CR64673 remains pending. (PSR ¶ 42).

On January 22, 2025, PPB again arrested defendant after he was observed by officers conducting fentanyl sales in downtown Portland. (PSR ¶ 17). Defendant was observed with a group of people huddled around him. (*Id.*) The crowd dispersed when officers approached. (*Id.*) Defendant then ditched two clear plastic baggies before officers contacted him. (*Id.*) Upon arrest, officers recovered the two clear plastic baggies and found them to contain powder fentanyl. (*Id.*) Additional powder fentanyl was found in defendant's jacket pocket during his arrest for a total of approximately 21.5 grams. (*Id.*) Defendant was also carrying $259 in cash.

**United States' Sentencing Memorandum**               **Page 2**

(*Id.*) Defendant was charged in Multnomah County Case number 25CR04271. (*Id.*) He was released from custody. (*Id.*) Multnomah County Case number 25CR04271 remains pending. (PSR ¶ 43).

On February 11, 2025, PPB, Homeland Security Investigations (HSI), and Oregon State Police (OSP) investigators initiated a text message conversation with defendant while operating in an uncover capacity. (PSR ¶ 18). Defendant subsequently offered to deliver an ounce of controlled substances for $1,000 to the undercover officer. (*Id.*) Investigators then established surveillance at the agreed-upon deal location in Portland. (PSR ¶ 19). When defendant confirmed his arrival on a phone call with the undercover officer, investigators pulled defendant over. (PSR ¶ 19). Defendant was in the driver's seat of his vehicle. (*Id.*) A search of the vehicle revealed a loaded black Berretta APEX 9mm semi-automatic pistol underneath the driver's seat. (*Id.*) Investigators also located a white chunky substance in the center console of the vehicle wrapped in clear plastic wrapping and a small digital scale. (*Id.*) The substance weighed approximately 29 grams with packaging and field tested presumptively positive result for fentanyl. (*Id.*) Subsequent laboratory testing confirmed that the substance was fentanyl, and it had a net weight of 27.34 grams. (*Id.*)

A fake identification was located in defendant's vehicle. (PSR ¶ 20). During his post-arrest interview, defendant originally gave a fake name and claimed that this was the first time he ever attempted to sell drugs. (*Id.*) After being shown the booking photo from his January 22nd arrest, defendant admitted his true identity. (*Id.*) Defendant also told interviewers that the firearm under the seat was his and that he kept it for protection because he was fearful of being robbed while selling drugs. (*Id.*) Defendant stated he had been robbed recently. Defendant also told interviewers that selling fentanyl was his main source of income and that he did not sell any

other type of drugs. Upon hearing that he would possibly face firearm-related charges, defendant stated the pistol in his car belonged to his juvenile passenger, contradicting what he had told interviewers earlier. (*Id.*) Defendant denied handling the pistol.

A consent search of defendant's cellphone revealed text messages indicative of drug trafficking. Specifically, investigators located messages in which defendant expresses interest in firearms being offered by customers in exchange for drugs as well as receiving an AR-15 from a customer. (PSR ¶ 21).

### B. The Charges and Plea Agreement

Defendant was arrested for the instant offense on February 11, 2025. He was charged by complaint and made his first appearance on February 14, 2025, and was ordered detained pending trial. ECF No. 5. On March 5, 2025, defendant was charged by indictment. ECF No. 7. On December 9, 2025, defendant pled guilty to Count One of the Indictment, which charges Possession with Intent to Distribute Fentanyl in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C). ECF No. 32.

### C. Guidelines Computation

Under the terms of the plea agreement, the parties agree that the base offense level is 24 based on a combined total of more than 40 grams and less than 160 grams of fentanyl. USSG §2D1.1. (PSR ¶ 27). The parties agreed that defendant is subject to a two-level enhancement for possessing a firearm in connection with this offense. USSG §2D1.1(b)(1). (PSR ¶ 28). Defendant has shown acceptance of responsibility, so a three-level reduction applies, provided he continues to demonstrate acceptance of responsibility. USSG §3E1.1(a), (b). (PSR ¶¶ 34–35). The parties agreed that defendant is ineligible for the safety valve and zero-point offender adjustments because he possessed a firearm in connection with the offense. (Plea Agreement ¶¶ 9–10). An

**United States' Sentencing Memorandum**                                                      **Page 4**

adjusted offense level of 23 with a criminal history category of I yields a guideline range of 46-57 months.

Defendant objected to the draft presentence report, arguing that he is entitled to a four-level minimal participant adjustment pursuant to USSG §3B1.2(a). (Defense Letter). In the final presentence report, the U.S. Probation applied a two-level minor participant adjustment under USSG §3B1.2(b). As discussed further below, the United States does not believe that defendant qualifies for a mitigating role adjustment under USSG §3B1.2 and maintains that the applicable guideline range is 46-57 months.

### D.     Minimal Role Adjustment

Under USSG §3B1.2, defendants can receive up to a four-level downward adjustment for being either "minimal participant" or a "minor participant" in the criminal activity. USSG §2D1.1(e)(2)(B)(i) provides that a four-level adjustment under §3B1.2(a) is "generally warranted" if the defendant's primary function was "plainly among" the lowest level of drug trafficking functions, "such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout." Here, defendant's conduct is not plainly among the lowest level of drug trafficking functions.  He was not transporting drugs from one place to another with no control of the quantity, running errands, or acting as the messenger or lookout for others. Instead, he was directly dealing with customers on multiple occasions. (PSR ¶¶ 16–21). He answered the undercover officer's text messages himself and arranged a deal to distribute an ounce of fentanyl for $1,000. (PSR ¶¶ 18–19). He did so while armed with a loaded gun. (PSR ¶ 19).

USSG §2D1.1(e)(2)(B)(ii) provides that a two-level adjustment under §3B1.2(b) is "generally warranted" if defendant's primary function was performing "another low-level

**United States' Sentencing Memorandum**                                                                                                **Page 5**

trafficking function," such as "distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (e.g., the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense)." Examples of this conduct "include a drug addict sharing his or her drugs with a co-addict or a recreational drug user sharing a portion of his or her 'stash' with friends." *See United States v. Rivas Contreras*, No. 25-CR-4185-TWR, 2026 WL 412482, at *3 (S.D. Cal. Feb. 13, 2026) (citing See Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* § 12.4 (rev. Dec. 2025)).

Defendant was distributing in non-user level quantities, as evidenced by his offering to sell an ounce of fentanyl to the undercover officer and then being found with approximately an ounce of fentanyl and a gun on February 11, 2025. (PSR ¶¶ 18–19). Further, there is no evidence that defendant was acting with a primary motivation other than profit. In fact, in his interview with law enforcement, he disclosed that dealing fentanyl was his primary source of income. His text messages contain evidence of drug dealing and accepting firearms in exchange for drugs. (PSR ¶ 21).

Based on the totality of circumstances in this case, a mitigating role adjustment is not appropriate.

### United States' Recommended Sentence

While not bound by the Sentencing Guidelines, district courts must consult the guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v.*

*Rita*, 551 U.S. 338, 347-48 (2007).  The guideline serves as "the starting point and the initial benchmark" in every sentencing proceeding and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."  *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita*, 551 U.S. at 350.  The guidelines serve as a "lodestone" at sentencing, and "cabin" or "anchor" a sentencing court's discretion.  *Peugh v. United States*, 569 U.S. 530, 531 (2013).  While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences."  *Id*.

The United States recommends a sentence of 46 months of imprisonment followed by three years of supervised release.  46 months is the low-end of the applicable guideline range when the defendant does not receive a downward adjustment for a mitigating role and does not receive a variance under 18 USC 3553(a).  U.S. Probation recommends 30 months after a two-level "minor participant" adjustment under USSG §3B1.2(b) and an additional two-level variance under 18 USC 3553(a).

The United States' recommended sentence accurately accounts for defendant's role in the offense and his history. Defendant continued to deal fentanyl even after being arrested and charged twice by the state. After both of his state arrests he was released and returned to dealing. He admitted drug dealing was his main source of income. Further, he increased the danger inherent in drug dealing by possessing a loaded semiautomatic pistol in February 2025. His text messages reveal that he was not only dealing drugs but was accepting firearms in exchange for drugs. An additional variance is unwarranted in this case. A 46-month sentence, coupled with a three-year term of supervised release, and a $100 special assessment, satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

**United States' Sentencing Memorandum** **Page 7**

**Conclusion**

Based on the foregoing, the government recommends a 46-month sentence to be followed by three years of supervised release and a $100 fee assessment.

Dated: March 4, 2026.                    Respectfully submitted,

                                                         SCOTT E. BRADFORD
                                                        United States Attorney

                                                        */s/ Charlotte Kelley*
                                                        CHARLOTTE KELLEY, DCB #1736456
                                                        Assistant United States Attorney